37792. GRIFFITH *v.* EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, *et al.*

Quillian, Judge. The claimant testified he began work at the employer's plant in 1951 and continued in the employer's service continuously until May 29, 1956; that during the perriod of his employment he was a tool and die worker and a machinist; that his work required a grinding process of fiberglas and steel, particles of which were thrown against his arms, into his hair and against his clothing; these shavings or particles worked their way through his clothing and into his skin; that as a result of the pieces of steel and glass penetrating his skin it became irritated and precipitated a skin disease that totally and permanently disabled him. The medical witnesses agreed upon the diagnosis of the claimant's condition as dermatitis herpetiformis, and that as a

result he was disabled to work, though all of the witnesses did not agree upon the extent of his disability. The claimant's physician was of the opinion that he was totally disabled, while an employer's medical witness thought he might do light work of a different nature from that in which he was engaged at the time of his separation from the employer. All of the doctors considered the cause of dermatitis herpetiformis unknown or obscure, and none professed to know what induced the disease. No definition of dermatitis herpetiformis is in the record. The American Illustrated Medical Dictionary (Dorland, 22nd Edition) defines the words: "Dermatitis—Inflammation of the skin. Herpetiformis—Dermatitis marked by grouped, erythematious, papular, vesicular, pustular, or bulbous lesions occurring in varied combinations, accompanied by burning and itching. Called also Duhring's disease." The claimant's doctor was of the opinion that the claimant's condition was so aggravated over the period of his employment as to result in his disability, while the employer's medical witness was of the contrary opinion, though one of them conceded that if the disease was in the stage known as weeping dermatitis herpetiformis the duties of the claimant's employment might be temporary and cause his condition to deteriorate. Here there was clearly a controversy both as to whether the claimant's inferred condition was caused or aggravated by the working conditions to which he was, in discharging the duties of his employment, exposed, and as to the extent of his disability.

The controversy involved the issues as to whether the disease which affected the claimant was precipitated or aggravated by the services he was employed to perform for the employer, and as to what extent the claimant was disabled. The controversy focused upon the properties of the particles of steel and glass which the claimant contended caused his disability. The claimant's doctor testified in this behalf: "Well, glancing over this report, I can see that it consists mostly of metals such as iron, copper, chromium, magnesium, lead, aluminum, and any of these metals can, from time to time, cause an allergic dermatitis. In fact, almost any of these elements listed here, such as arsenic, and I note that arsenic is listed in a small quantity; almost any of these elements can cause a skin reaction in a properly sensitized skin. Of course, that does not mean that it would cause a skin reaction in everybody, but it certainly could."

The opinion of the employer's medical witness was diametrically opposite to the view of the claimant's doctor. He gave positive evidence that none of the chemical elements listed in the report could have caused or aggravated the condition resulting in the claimant's disability. This witness likewise, while advancing theories, readily admitted that he was not certain what caused dermatitis herpetiformis. Other evidence of the claimant supported his contention that his disability was caused by an occupational disease. The claimant's doctor testified: "We have this much in favor of the aggravation; this man was working at Lockheed, and he did not have a rash during the time we treated him prior to the development of this rash, and he had been exposed to these various elements, and this occurred while he was working at Lockheed, and we felt that an exposure to metal precipitated it and we thought perhaps also that it did, too."

The disease that the claimant contended caused his disability was an occupational disease within the meaning of Code (Ann.) § 114-803 if it arose out of his employment, and the evidence made an issue as to that question.

Code (Ann.) § 114-819 reads: "In any claim for compensation for an occupational disease where medical questions shall be in controversy, the State Board of Workmen's Compensation shall refer the case to the Medical Board for investigation and report. No award shall be made in such case until the Medical Board shall have duly investigated the case and made its report with respect to all medical questions at issue. The date of disablement, if in dispute, shall be deemed a medical question. (Acts 1946, pp. 102, 113)."

Its mandate is explicit. Where upon the hearing of a workmen's compensation case as to whether the claimant is affected with an occupational disease, or to what extent he is disabled by such disease, the issue must be referred by the Workmen's Compensation Board to the Medical Board. The Compensation Board's only jurisdiction is then to enter an award in conformity to the finding of the Medical Board.

The parties could not by submitting the controversy to the Workmen's Compensation Board confer jurisdiction upon that tribunal. In *Smith* v. *Ferrario*, 105 *Ga.* 51, 52 (31 S. E. 38) it is held: "When the case came on for consideration by this court, we discovered that the Code gives no jurisdiction to the judges of the city or superior courts to attach a witness

for contempt for refusing to testify under this particular proceeding, but that the power and authority to do so is, in express terms, given to the commissioners, as will be seen by reference to section 5321, above quoted . . . It appears from the supplemental record brought up by the defendant in error, that this case was referred to the judge of the city court by consent of both parties, in order, as it was stated, to have the question determined. The case was argued here without any motion to dismiss for want of jurisdiction. Consent of parties, however, can not give a court jurisdiction of a subject-matter when it has none by law; and when this court discovers from the record that a judgment has been rendered by a court having no jurisdiction of the subject-matter and the case is brought here for review upon writ of error, this court will of its own motion reverse the judgment. If the judge has refused to entertain the motion and that ruling has been excepted to and brought here for review, this court will, on motion or ex mero motu, dismiss the writ of error. *Pope* v. *Jones,* 79 *Ga.* 487."

We are of the opinion that the Board of Workmen's Compensation was without jurisdiction to pass on the controversy in the instant case, and the judgment of the superior court affirming the award entered by the deputy director and affirmed by the full board is error.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*

DECIDED SEPTEMBER 9, 1959.

*Marion W. Corbitt,* for plaintiff in error.
*Smith, Swift, Currie & McGhee, Frank M. Swift,* contra.